Aaron PINKSTON, Plaintiff,

v.

Peter BENSINGER and John J. Twomey, Defendants.

No. 72 C 2153.

United States District Court, N. D. Illinois.
May 18, 1973.

# 96

Aaron Pinkston, pro se.

James B. Zagel for William J. Scott, Atty. Gen.. of Ill., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendants' motion either to dismiss the complaint or for summary judgment in their favor. The plaintiff is presently incarcerated in the Illinois State Penitentiary, Joliet Branch, Special Programs Unit, pursuant to a conviction by the Circuit Court of Cook County for armed robbery. Plaintiff was sentenced to serve from two to five years in the penitentiary on June 10, 1971.

The defendants are Peter B. Bensinger, former director of the Illinois Department of Corrections, and John J. Twomey, Warden of the Illinois State Penitentiary, Joliet Branch.

This is an action to redress an alleged deprivation of the plaintiff's civil rights guaranteed by the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983. The jurisdiction of this Court is predicated on 42 U.S.C. §§ 1981 and 1983 and 28 U.S.C. §§ 1331 and 1343(3).

The plaintiff in his complaint alleges the following deprivations of his constitutional rights:

1. He must sleep on a concrete base with a '"filthy" mattress and with inadequate covering.
2. The cell is dark, damp and chilly.

3. Showers are infrequent.

4. Medical attention is inadequate.

5. He is served cold food.

6. He is not allowed privacy during visitation periods.

7. He is not allowed a shower or adequate clothing prior to visitation.

8. Recreation is limited to one-half hour per month.

9. He is not permitted an opportunity to take part in educational programs nor permitted access to a general law library.

10. He is not allowed religious services nor furnished religious reading material.

11. Some of his incoming and outgoing mail is not being delivered.

The plaintiff seeks declaratory and injunctive relief against the defendants.

It is the opinion of this Court that the motion of the defendants is meritorious and that the instant case is controlled by the Seventh Circuit decision in Armstrong v. Bensinger, 479 F.2d 701 (1973) in that the allegations of the plaintiff's complaint do not rise to the stature of a constitutional violation.*

The defendants, in support of their instant motion, have submitted affidavits and exhibits which clearly demonstrate the following important factors regarding the existing conditions:

1. Mattresses used in the segregation unit are of the same type and condition as those provided the general prison population. If an inmate is dissatisfied with the condition of his mattress he may direct his grievance to a guard or other prison official. In that case an inspection is made and if the mattress is found to be of poor quality, it is replaced. Further, each inmate is supplied with two blankets and, if weather warrants, a third blanket is provided.

2. The complex in which the segregation unit is located is centrally heated and kept at a temperature of approximately seventy degrees. Each cell contains a ventilation shaft and each ventilation shaft contains a light fixture. Also the artificial lighting outside the cells provide additional illumination in the cell. Attempts to improve the lighting conditions have been physically resisted by the inmates.

3. All inmates of the segregation unit are given access to shower facilities at least once a week. The only exception to this rule is where the attempts to provide such facilities are thwarted by the conduct of the inmates themselves. Furthermore, inmates are provided with sanitary items in order that they may attend to their personal hygiene in the confines of their cells.

4. Illinois Department of Corrections Administrative Regulation Number 807 provides that inmates in segregation shall receive three

---

* The Seventh Circuit in *Armstrong* stated: ". . . due process is a flexible concept which takes account of the importance of the interests at stake; [24] thus, it is abundantly clear that a myriad of problems of prison administration must remain beyond the scope of proper judicial concern.[25] Only significant deprivations of liberty raise constitutional issues under *Morrissey*." Id. at 713 (footnotes omitted). The Court, in footnote 25, cites to the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Correction 84 (1967), for examples of the types of prison administration which must remain beyond the scope of judicial concern: "Enormous discretion is left to correctional administrators to defined the conditions of imprisonment. They determine the way in which the offender will live for the term of imprisonment; how he is fed and clothed; whether he sleeps in a cell or a dormitory; whether he spends his days locked up or in relative freedom; what opportunity he has for work; education or recreation. They regulate his access to the outside world by defining mailing and visiting privileges."

meals per day. Plaintiff was in fact served hot meals and such meals more than met nutritional standards.

5. All inmates of the segregation unit are afforded access to the exercise yard for at least one hour per week unless prevented by the conduct of the inmates. Plaintiff's yard privileges were rescinded by the Disciplinary Committee for ninety days, commencing August 28, 1972, for fighting in the guard hall. Plaintiff had the right to be present at the Disciplinary Hearing and answer the charges against·him.

6. There is a detailed procedure, recently established, assuring the inmates of the Segregation Unit the same access to legal materials as provided the general prison population.

7. Illinois Department of Corrections Regulation Number 807 provides that the prison chaplains will visit the inmates in Segregation regularly or upon request. Further, the regulation states that reading and educational materials may be ordered by the inmates. It does not appear that the plaintiff has ever been refused a request to see the chaplain or secure religious materials from him. ;

8. The plaintiff, being placed in Segregation, has not lost any mail privileges enjoyed by the general prison population. Further, the plaintiff's mail record demonstrates that he has enjoyed such mail privileges.

■ It is well settled that segregated confinement, comparable to the Special Program Unit at Joliet, does not in itself violate the Eighth Amendment. Burns v. Swenson, 430 F.2d 771 (8th Cir. 1970); United States ex rel. Knight v. Ragen, 337 F.2d 425 (7th Cir. 1964), cert. denied, 380 U.S. 985, 85 S.Ct. 1355, 14 L.Ed.2d 277 (1965); United States ex rel. Miller v. Twomey, 333 F. Supp. 1352 (N.D.Ill.1971).

Federal courts have also held that allegations similar to the specific allegations in the plaintiff's complaint fail to state a claim upon which relief can be granted.

■ The mere fact that a concrete base is used to support plaintiff's mattress does not constitute a condition "so foul, so inhuman and so violative of basic concepts of decency" to fall within the proscription of the Eighth Amendment. Wright v. McMann, 387 F.2d 519 (2nd Cir. 1967). This is especially true since plaintiff is not forced to sleep on bare concrete, but is provided with a mattress, sheets and blankets which are exactly the same as those provided the general prison population. The use of the word "filthy" in this context as was used by the plaintiff in the instant complaint has been held to be a general conclusory allegation insufficient to state a claim upon which relief can be granted. Adams v. Pate, 445 F.2d 105 (7th Cir. 1971). See also, Ford v. Board of Managers, 407 F.2d 937 (3rd Cir. 1969).

In the absence of any factual allegation that the sheets and two blankets are inadequate covering, the plaintiff's allegations are without merit. Metcalf v. Ogilvie, 436 F.2d 361 (7th Cir. 1970); Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969).

The lighting conditions in the Joliet penal institution's Special Programs Unit complex are quite superior to those found in Adams v. Pate, *supra*, wherein the turning on of the cell light only when the inmate was fed was held not to constitute cruel and unusual punishment.

■ It is the opinion of this Court that the defendant's procedure and opportunities for showers did not constitute cruel and unusual punishment. See also Landman v. Peyton, 370 F.2d 135 (4th Cir. 1966); Sostre v. McGinnis, 442 F.2d 178 (2nd Cir. 1971).

■ In dealing with the medical needs of the inmates, prison officials

have broad discretion as to the type of medical treatment which is demanded and federal courts will not inquire into the adequacy or sufficiency of such medical care. United States ex rel. Lawrence v. Ragen, 323 F.2d 410 (7th Cir. 1963). Only when the inmate has presented "exceptional circumstances" will the court intervene. United States ex rel. Knight v. Ragen, *supra*. General allegations of negligence or inadequate medical treatment fail to state a cause of action under the Civil Rights Act. United States ex rel. Knight v. Ragen, *supra*; Hopkins v. County of Cook, 305 F.Supp. 1011 (N.D.Ill.1969); Church v. Hegstrom, 416 F.2d 449 (2nd Cir. 1969). In the instant action, the plaintiff does not contend that he has ever been denied a request for medical care. Nor is his allegation of "inadequate medical attention" supported by any other factual allegation which could constitute "exceptional circumstances." The plaintiff has failed to state a claim under the Civil Rights Act.

■ The plaintiff's allegations that he was served cold food, which is contrary to the defendants' affidavits and exhibits, is insufficient to establish a denial of constitutional rights. To establish such a violation plaintiff would have had to allege that he was denied that quality or quantity of food required for appropriate nutrition. Collins v. Schoonfield, 344 F.Supp. 257 (D.C.Md. 1972); Landman v. Royster, 333 F. Supp. 621 (E.D.Va.1971). The plaintiff in the instant complaint makes no such allegations.

■ Visitation procedures are clearly matters within the scope of prison discipline and security. Perez v. Turner, 462 F.2d 1056 (10th Cir. 1972); Walker v. Pate, 356 F.2d 502 (7th Cir. 1966).

■ Any inconvenience suffered by plaintiff's lack of privacy during visitation periods is certainly outweighed by the state's interest in preventing the introduction of weapons or other contraband into a penal institution. If, as it has been held, prison authorities may bar certain visitors altogether, surely they may require that a prison official be present during visitation periods. See Rowland v. Wolff, 336 F.Supp. 257 (D.C.Neb.1971); Walker v. Pate, *supra*.

Restricted recreation as allowed by the Special Programs Unit has been held not to constitute cruel and unusual punishment. Landman v. Peyton, *supra*; Novak v. Beto, 453 F.2d 661 (5th Cir. 1971); State ex rel. Pingley v. Coiner, 186 S.E.2d 220 (W.Va.Sup.Ct.1972).

The portion of the instant complaint alleging a deprivation of an opportunity to attend educational classes conducted by the prison does not raise a constitutional question and therefore is not a proper subject for relief under the Civil Rights Act. Diehl v. Wainwright, 419 F.2d 1309 (5th Cir. 1970); Queen v. South Carolina Dept. of Corrections, 307 F.Supp. 841 (D.C.S.C.1970); United States ex rel. Cleggett v. Pate, 229 F. Supp. 818 (N.D.Ill.1964). Likewise, denial of access to the prison's general library is among the many restrictions and limitations upon activity necessarily within the discretion of prison administrators. Landman v. Peyton, *supra*; Breece v. Swenson, 332 F.Supp. 837 (W.D.Mo.1971). Certainly the restrictions in the instant case are far less prohibitive than those found constitutional in Sostre v. McGinnis, 442 F.2d 178 (2nd Cir. 1971) (inmate could not buy or receive books, magazines or newspapers).

■ The plaintiff's allegation that he, as other inmates in segregation, is not allowed to participate in worship services open to the general prison population, does not assert a deprivation that rises to the level of a constitutional violation. See Wright v. McMann, *supra*. It is clear that inmates "justifiably segregated" while retaining their right to religious belief, can be prohibited from attending corporate religious services. Sharp v. Sigler, 408 F.2d 966 (8th Cir. 1969); Cooper v. Pate, 382 F.2d 518 (7th Cir. 1967); Breece v. Swenson, *supra*; Cruz v. Beto, 329 F.Supp. 443 (S. D.Tex.1970); Belk v. Mitchell, 294 F.

Supp. 800 (W.D.N.C.1968). Such a general allegation as the plaintiff's, that one is denied the right to "participate in religious services" is insufficient to state a claim upon which relief can be granted.

■ Plaintiff seems to allege that certain unidentified outgoing mail is not being forwarded by prison officials. The plaintiff's prison mail record does not support any of these allegations. Plaintiff does not specify by type, content or date the pieces of mail to which he is referring. Although the rules of pleading in federal courts are to be liberally construed in *pro se* prisoner cases, Haines v. Kerner, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972), the Federal Rules do not authorize complaints, such as the instant one, which are framed in vague, general and factually unsupported allegations. Metcalf v. Ogilvie, *supra*; Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969).

Accordingly, it is hereby ordered that the defendants' motion to dismiss is granted.